MOVIUS et al. v. UNITED STATES.

(Circuit Court, S. D. New York. February 18, 1895.)

CUSTOMS DUTIES—CLASSIFICATION—"LANOLINE."

"Lanoline" being a manufactured article made from wool grease by an elaborate process through which the potash salts contained in the crude wool grease have been entirely removed; the volatile fatty acids partially removed; the removal of the potash salts having destroyed any combination that had existed between them and the fats, the fats having been thereby changed in condition; the resulting "lanoline" being chiefly cholesterine and similar fats, fatty acids and varying percentages of water, an article patented as to its processes of manufacture and trade name and being widely advertised as possessing therapeutic and medicinal qualities, is properly dutiable as a "medicinal proprietary preparation" at 25 per cent. ad valorem under paragraph 75 of the tariff act of October 1, 1890, and not as "wool grease" at one-half of one cent per pound under

paragraph 316 of the act as claimed in the importers' protest. The classification of the merchandise for duty by the collector of customs as "rendered oil" at 25 per cent. ad valorem under paragraph 76 of the same tariff act was therefore affirmed.

This was an application by J. Movius & Son, importers of certain merchandise known as "Lanoline," for a review of the decision of the board of general appraisers sustaining the decision of the collector of the port of New York as to the rate of duty on such merchandise.

Albert Comstock, for importers.

Wallace Macfarlane, U. S. Atty., and James T. Van Rensselaer, Asst. U. S. Atty., for collector.

COXE, District Judge. The collector classified the merchandise in question under paragraph 76 of the act of 1890, which provides for "rendered oils" and "expressed oils." The importers protested, insisting that it should have been classified under paragraph 316 of the same act as "wool-grease." The board in an elaborate and carefully prepared opinion, after discussing the various questions involved, reached the following conclusions:

"The substance known as 'Lanoline' is:

"(1) A preparation composed of pure wool-fat and water.

"(2) It is not the wool-grease of commerce and is not an oil, but is commercially known as 'Lanoline.'

"(3) It is a preparation and composition recommended by the manufacturers to the public as a proprietary article.

"(4) It is a preparation and composition prepared according to a private and patented formula or process.

"(5) It is a patented composition or preparation.

"(6) It is a proprietary preparation recommended to the public as a remedy for diseases or affections affecting the human or animal body.

"(7) It is a medicinal proprietary preparation, in the preparation of which alcohol is not used, and of which alcohol is not a component part.

"(8) It is offered for sale by the manufacturers and protestants put up in tins, labeled with notice thereon that the same is patented.

"(9) The manufacturers have duly registered as their trade-mark the word 'Lanoline' in the United States patent office, and they affixed the trade-mark to each package of lanoline imported by the protestants.

"(10) The protestants entered such merchandise by their written entry as 'Lanoline, expressed oil.'"

The board decided that the merchandise should have been classified under paragraph 75 of the same act as a "medicinal proprietary preparation," but that it was not "wool-grease" in fact or commercially. The question, then, is, should "Lanoline" be subject to duty as wool-grease? If not, the decision of the board should be affirmed.

A number of witnesses have been examined in this court, but their testimony does not change materially the case as presented to the board. The conclusions reached by the board are substantially correct, most of them being sustained by the new evidence. Wool-grease is of a brown color and a viscous consistency. It is extracted from wool washings, and consists of cholesterine and other fats and volatile fatty acids. It contains from 15 to 30 per cent. of potash. It emits a rank, disagreeable odor, it resembles molasses and tar mixed together, it is imported in returned petroleum barrels, it is worth

from $2\frac{1}{2}$ to 3 cents a pound and its chief use is for stuffing leather. "Lanoline," on the contrary, is an expensive, highly finished product produced from wool-grease by an elaborate patented process of elimination and purification, by means of which many of the impurities and all of the potash of the crude wool-grease are removed. "Lanoline" is white in color, is imported in small, carefully prepared packages and is used principally in therapeutics. It is not wool-grease, chemically, commercially, or in common parlance. One of the ingredients of wool-grease has disappeared entirely and the others are found in a changed and purified state. "Lanoline" is made from wool-grease just as vaseline is made from petroleum or cheese is made from milk, but it was never known as wool-grease in commerce and no business man would have thought of sending "Lanoline" to fill an order for wool-grease. The impression derived from the entire record is very strong that the term "wool-grease" would convey to the mind of every business man familiar with the subject an idea of the crude, raw material above described, and it is thought that congress so used it in the tariff act of 1890. It cannot be that a refined, expensive product like "Lanoline" should come in under a provision which was manifestly intended to apply to a crude, cheap product differing from "Lanoline" in almost every essential feature. The decision of the board is affirmed.