APGAR et al. v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit. January 5, 1897.)

No. 330.

1. APPEALS IN CUSTOMS CASES—FINDINGS OF BOARD OF APPRAISERS.

The circuit court of appeals will not review a finding of facts by the board of general appraisers, not controverted by new evidence in the circuit court, unless manifestly unsupported by the evidence or clearly against the weight thereof.

2. CUSTOMS DUTIES—CLASSIFICATION—"NUCOA BUTTER."

"Nucoa butter," made, by a process not clearly shown, from cocoanut oil, which process consists in part in pressing the oil in a solid state to eliminate the softer oils, then melting the remaining solid, and washing it with steam, is dutiable as "cocoa butterine," under paragraph 230 of the act of August 27, 1894, and is neither exempt from duty as "cocoanut oil," under paragraph 568, nor dutiable as an unenumerated manufactured article, under section 3, of said act.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

This was an application by Apgar & Co. for a review of the decision of the board of general appraisers affirming the action of the collector at Chicago in assessing duty upon certain imported goods. The circuit court affirmed the decision of the board, and the importers have appealed.

N. W. Bliss, for appellants.

John C. Black, U. S. Dist. Atty., and Oliver E. Pagin, Asst. U. S. Atty.

Before WOODS and SHOWALTER, Circuit Judges, and BUNN, District Judge.

BUNN, District Judge. This appeal involves the question of the proper classification of an article of merchandise imported by the appellants as "nucoa nut oil," under the act of August 27, 1894, which contains the following provisions: First, from the schedules of duty-paying articles: "230. Cocoa butter or cocoa butterine, three and one-half cents a pound." Second, from the free list: "568. Oils, * * * nut oil or oil of nuts, not otherwise specially provided for in this act, * * * palm and cocoa nut. * * *"

The foreign sellers, in the original invoice, gave to the goods the name of "nucoa butter," but, in brackets, gave what is claimed by appellants to be its real descriptive name, as "solidified cocoanut oil." The United States consul general at London certified the goods to be "solidified cocoanut oil." The statement by the shippers, certified by the local consul, described the goods as "nucoa butter." The goods were entered for consumption, and transported to Chicago, as "cocoanut oil," where the collector demanded a duty of

3½ cents per pound, under the above provision for "cocoa butterine." The importers paid this duty under protest, claiming the goods to be exempt under paragraph 568, as above, or, if dutiable at all, to be so at 20 per cent. ad valorem, under section 3, covering unenumerated manufactured articles. The case was referred to the board of United States general appraisers, at New York, where testimony was taken, and a report made affirming the action of the collector. No testimony was taken or offered on the hearing in the circuit court, where the decision of the general appraisers was affirmed, and so the case stands here upon the testimony taken before the board of appraisers, and their decision thereon, affirmed by the circuit court. In the opinion given by the board, it is said:

"The merchandise is invoiced as 'nucoa butter.' It is used chiefly by confectioners as a substitute for cocoa butter. It was assessed for duty, as 'cocoa butterine,' at 3½ cents a pound, under paragraph 230, act of August, 1894, and is claimed to be exempt from duty under paragraph 568, as cocoa nut oil, or to be dutiable at 20 per cent. under section 4. In a circular submitted in evidence, the following description appears: 'Nucoa is a hard butter, extracted from sweet nuts, prepared by patent process, its melting point being 87° F. It is as good and genuine an article for chocolate thinning as cocoa butter itself, and presents a saving of nearly 50 per cent. In caramels it is being successfully used by some of the largest makers instead of cream, and renders wax and wrappers unnecessary. Nucoa must not be confounded with ordinary cocoa butter substitutes. It is an exceptionally good article, sells freely in Europe, and has already been taken hold of by the American trade.' The manufacturers make affidavit that the following is the process of manufacture: 'Nucoa, prepared according to British patent No. 16,854, 1892: The cocoanut oil is placed, in a solid condition, in hydraulic presses, and submitted to a second pressing at a suitable temperature, until the soft oils are expressed from it. We then take the hard oil remaining, and refine it by carefully washing it with steam, in order to remove its characteristic odor, as is more particularly described in the aforesaid patent. This extra-refined cocoanut oil is then colored, to make it more pleasing to the eye, with a little yellow coloring matter, dissolved in stearic acid.' It is evident, from this description, that the merchandise is a product of cocoanut oil, rather than the cocoanut oil of commerce. We find that it is not cocoanut oil, and overrule the claim that it is exempt from duty, under paragraph 568. As nucoa butter is a cocoa butter substitute, we find, in accordance with G. A. 1, 174, that it is cocoa butterine, and overrule the claim that it is dutiable at 20 per cent., under section 3. Reference is made to the principle held in the classification of lanoline (Movius v. U. S., 66 Fed. 734); and of concentrated cherry juice (Fed. Rep. C. V. p. 984)."

There is also in the record an affidavit by one of the directors of the manufacturing company, which says:

"The product 'nucoa' is manufactured solely from cocoanut oil roughly after the following manner: The crude cocoanut oil is submitted to the temperature of 70° F., and then pressed by suitable means until all the oils liquid at that temperature, or most of them, are removed. The remaining hard fat is then further refined by melting it at a higher temperature, and washing it with steam, until the volatile oils or ethers are expelled. This refined oil is then tinted with yellow color, about one part to 5,000, to make it more pleasing to the eye, and is then run into molds, and allowed to cool. It sets hard upon cooling, and in this condition is exported."

The case here turns upon the question of fact whether the article is cocoa butterine, as found by the board of general appraisers, or is cocoanut oil, within the meaning of paragraph 568. It appears, from the evidence, that, in preparing this merchandise for the exportation to America, it is submitted to a first pressing, of which no

details are given, and to a second pressing, of which partial details appear, and of the effect of which pressings this court cannot well judge, to say nothing of the process under the English patent, the effect of which, in reducing the article to the resultant article, nucoa, is not given. How much effect these things may have in reducing the article from a state properly denominated "cocoanut oil" to a substance more nearly allied to a product of cocoanut oil, and properly denominated "cocoa butterine," this court is not in so good a position to judge as was the board of general appraisers, who heard the evidence, and had, presumably, more expert knowledge of the subject. In a proper case, no doubt, this court may go back of the decision of the board of general appraisers and the circuit court, and review the case upon the evidence, and, if need be, overrule their decision. But it requires a clear case to enable the court to do that. This court ought not, and will not, review a finding of facts made by the board of general appraisers and not controverted by new evidence in the circuit court, except it be manifest that the decision of the board of appraisers is unsupported by the evidence, or is clearly against the weight of evidence. See In re White, 53 Fed. 787; U. S. v. Van Blankensteyn, 5 C. C. A. 579, 56 Fed. 474; In re Muser, 49 Fed. 831.

In this last case Judge Lacombe very properly says:

"It was plainly contemplated by the framers of the act that the board would sit as experts to decide in a summary manner questions of value and classification arising under the tariff laws, reaching their decision from their own expert knowledge, and from the evidence submitted to them, or such as they might obtain."

We are unable to say that the decision of the board of general appraisers is either unsupported by the evidence or is opposed to weight of evidence. On the contrary, we are of opinion that the finding of facts was justified by the evidence in the case, and the decision of the circuit court is affirmed.