UNITED STATES v. LEONARD et al.

(Circuit Court, D. Massachusetts. March 15, 1900.)

No. 806.

CUSTOMS DUTIES—CLASSIFICATION—GREASE.

Substances obtained by washing the solid residue left after the distillation of wool grease, known as "hard yellow grease" and "white grease," which are of a yellowish color, and have the consistency of a hard cake, are so differentiated from wool grease by the treatment received as to make them different substances, within the purview of the tariff laws; and, being exclusively used in the stuffing and dressing of leather, they are entitled to free entry, under paragraph 568 in the free list of the tariff act of 1897, and are not dutiable as wool grease, under paragraph 279.

This was a petition by the United States for the review of the decision of the board of general appraisers fixing the classification for duty of certain imported merchandise.

Boyd B. Jones, U. S. Atty., and Albert H. Washburn, Asst. U. S. Atty.

Howard T. Walden, for importers.

LOWELL, District Judge. In this case the court has to decide if certain substances sometimes known as hard yellow grease and white grease, L. D. S., are dutiable under paragraph 279 of the tariff act of 1897, or are free under paragraph 568 of the same act. These paragraphs read as follows:

"279. Tallow, three fourths of one cent per pound; wool grease, including that known commercially as degras or brown wool grease, one half of one cent per pound."

Paragraph 568 is in the free list.

"568. Grease and oils (excepting fish oils), such as are commonly used in soap-making or in wire-drawing, or for stuffing or dressing leather, and which are fit only for such uses, and not specially provided for in this act."

The general appraisers decided that the articles in question were not dutiable, because they were sod oil, but evidence subsequently taken shows that this classification was erroneous. Sod oil is the oil which has been fulled into skins during the operation of tanning, and has been subsequently washed out with soda. Wool grease is the recovered grease which is excreted by the sheep, and is recovered from the suds after the wool has been scoured. The substances here in question are obtained by washing the solid residue left after the distillation of wool grease. Wool grease is commonly brown, though sometimes of a lighter color. It has somewhat the consistency of molasses or soft lard. The substances in question are yellow or yellowish, and have the consistency of a hard cake. All the substances mentioned above, and some others, are used in dressing leather. Sod oil has no other use. Plainly, congress intended to impose duties at various rates upon some substances used in dressing leather, and to admit free of duty other

substances having the same use. The principal question here raised is this: Has the treatment received by the substances in question so differentiated them from wool grease as to make them different substances in the purview of the tariff act. Mr. Hopkins, the special examiner who made the original report, a man familiar with the chemical nature of all these substances, testified that both the distillate and the residue after distillation are wool grease, and that this fact is determined by chemical tests. On the other hand, Mr. Webster, an examiner in the appraiser's office in New York, whose department is concerned with wool grease and degras, testified that he did not recollect that he had ever seen before the substances in question; that he would not consider them wool grease, —not the article that is commercially known as wool grease,—and that they differed from wool grease in color, in viscosity, and in being a hard substance. Mr. Marble, an experienced merchant of oils and greases, called by the government, testified that he did not recognize the article in question as an article that he had ever dealt in. Mr. Bush, called by the government, an experienced importer of greases and oils, having a laboratory, testified that the articles in question were products such as he recovered in his laboratory with superheated steam while trying to break up degras or wool grease, and that they would probably not be a good delivery under a contract to supply degras or wool grease as marketed by him. The importer testified that the substances in question would not be a good delivery for the article known in trade and commerce as wool grease; that the residuum, after distillation of wool grease, was considered of no special value until it was finally brought up and washed, although in its imported condition it had a value somewhat greater than that of wool grease.

When the appearance of a substance is changed by treatment, it is a question of degree to determine if the product has ceased to be the original substance. No one test—that of chemistry, appearance, consistency, or merchantability—will absolutely determine this question. In Movius v. U. S. (C. C.) 66 Fed. 734, the court held that lanoline, for the purposes of the tariff, is not the same thing as wool grease, from which it is made; yet lanoline contains cholesterine, the presence of which in the substances here in dispute is the characteristic supposed to relate them to wool grease. The court there said:

"No business man would have thought of sending lanoline to fill an order for wool grease. The impression derived from the entire record is very strong that the term 'wool grease' would convey to the mind of every business man familiar with the subject an idea of the crude raw material above described; and it is thought that congress so used it in the tariff act."

Doubtless, lanoline differs from wool grease more than do the substances in question, but the differences are of considerably the same sort.

In Smith v. Rheinstrom, 13 C. C. A. 261, 65 Fed. 984, the court of appeals for the Sixth circuit held that an article produced by taking cherry juice, and evaporating much of the water naturally present therein, was not cherry juice, within the intent of the tariff act.

100 F.—19

The differences there relied upon seem to have been less than those existing in the present case. See, also, U. S. v. Wells, 23 C. C. A. 210, 77 Fed. 411; Apgar v. U. S., 24 C. C. A. 113, 78 Fed. 332.

Upon the whole, I am of opinion that the articles in question are not wool grease within the intent of the tariff act, and that they are, therefore, not so dutiable.

Counsel for the government further contended that it was not shown that the substances in question were used exclusively for stuffing or dressing leather; but this is, I think, fairly established by the testimony of the importer, who appears to have somewhat of a monopoly. The testimony of Mr. Hopkins that these substances could be converted into lanoline does not appear to me controlling. See U. S. v. Wells, above cited.