PERKINS CO. v. UNITED STATES.

(Circuit Court, S. D. New York. July 13, 1910.)

No. 3,514.

1. CUSTOMS DUTIES (§ 37*)—CLASSIFICATION—ANTHRACITE COAL.
   *Held*, that certain anthracite coal does not contain 92 per cent. of fixed carbon, and is therefore within the provision in Tariff Act July 24, 1897, c. 11, § 1, Schedule N, par. 415, 30 Stat. 190 (U. S. Comp. St. 1901, p. 1674), for "all coals containing less than ninety-two per cent. of fixed carbon."
   [Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 37.*]

2. CUSTOMS DUTIES (§ 5*)—RETROACTIVE LEGISLATION—"HEREAFTER."
   Under Free Coal Act Jan. 15, 1903, c. 189, § 2, 32 Stat. 773 (U. S. Comp. St. Supp. 1909, p. 656), prescribing that the provision in the tariff act of 1897 for a duty on coal "shall not hereafter be construed to authorize the imposition of any duty upon anthracite coal," the term "hereafter" was

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

not intended to be retroactive, and did not apply to coal imported before that date.

[Ed. Note.—For other cases, see Customs Duties, Cent. Dig. § 4; Dec. Dig. § 5.*

For other definitions, see Words and Phrases, vol. 4, pp. 3277–3279.]

On Application for Review of a Decision by the Board of United States General Appraisers.

The case was submitted on briefs, without oral argument.

Shearman & Sterling (Carl A. Mead, of counsel), for importers.

D. Frank Lloyd, Asst. Atty. Gen. (John A. Kemp, Asst. Atty., of counsel), for the United States.

HAZEL, District Judge. The question presented by this appeal from the decision of the Board of General Appraisers arises from the classification by the collector of importations of anthracite coal by the vessels Devonshire and Glencoe, and the assessment thereof by him at the rate of 67 cents per ton under the following provision of Tariff Act July 24, 1897, c. 11, § 1, Schedule N, par. 415, 30 Stat. 190 (U. S. Comp. St. 1901, p. 1674):

"415. Coal, bituminous, and all coals containing less than ninety-two per centum of fixed carbon and shale, sixty-seven cents per ton of twenty-eight bushels, eighty pounds to the bushel."

The importer claims that the merchandise is entitled to free entry under section 2, Free List, par. 523, 30 Stat. 197 (U. S. Comp. St. 1901, p. 1682), which reads as follows:

"523. Coal, anthracite, not specially provided for in this act, and coal stores of American vessels, but none shall be unloaded."

The record shows that the entry by the Devonshire was liquidated on September 20, 1902, and the entry by the Glencoe was liquidated on October 16, 1902, and protest filed by the importers on October 27, 1902. On January 15, 1903, Congress passed an act substantially authorizing the Secretary of the Treasury to make full rebate of duties imposed by law on all coal of every form and description imported into the United States from various countries for the period of one year from and after the passage thereof. Section 2, c. 189, 32 Stat. 773 (U. S. Comp. St. Supp. 1909, p. 656), provides that the provisions of paragraph 415 of the tariff act of July 24, 1897, "shall not hereafter be construed to authorize the imposition of any duty upon anthracite coal." Accordingly, the importers claim to be entitled to a refund of the duties paid on the cargoes of the steamers Glencoe and Devonshire, amounting to $5,040.66.

Three objections to the refund are urged by the government in the brief submitted: (1) That the coal in fact contained less than 92 per cent. of fixed carbon; (2) that the protest on the importation by the steamship Glencoe was filed more than 10 days after the entry was liquidated; (3) that the act of January 15, 1903, was not retrospective in its operation. While these objections were earnestly controverted by the importers, a careful consideration of the facts constrains me

to agree with the board in its findings of fact. The pertinent inquiry is, Did the coal contain more than 92 per cent. of fixed carbon? Dr. Elliott, for the importers, testified that it did; he made the test in his laboratory on the pier from 64 samples at the time the cargo was discharged; but his method of making the analysis is attacked by the government, in that he did not determine the percentage of ash contained therein, although admitting that such element, to the extent at least of 1 per cent., is always present. Dr. Moore, testifying for the government, extended his examination and used a blast lamp in the crucible, burning away all the carbon, thus eliminating the ash which was present in quantities of 2 per cent. His analysis in its finality showed that the coal contained from 84 to 89 per cent. of fixed carbon excluding the ash. He further estimated the average of ash in Welsh anthracite to be at least 2 per cent. His testimony is challenged by the importers on the ground of indefiniteness, but some corroboration thereof is found in the case of In re Coles (C. C.) 93 Fed. 954, affirmed 100 Fed. 442, 40 C. C. A. 478. In that case it was held as an incontrovertible fact that samples of anthracite coal, taken and tested, show variation in the amount of fixed carbon ranging from 86 to 94 per cent., and the Court of Appeals for the Ninth Circuit, when the case came before it for decision said:

"All cargoes of coal whatever, including all cargoes of anthracite coals as they come from the mine, or are loaded or imported in ships or dealt in commercially, contain less than ninety-two per cent. of fixed carbon, although sample lumps for custom house, picked at random from such imported cargoes, have averaged as high as ninety-four per cent. in fixed carbon."

And from prior adjudications by the board (G. A. 5,330, T. D. 24,392), involving the question of duties on anthracite coal, it appears that it was regarded as established that Welsh anthracite coal naturally contains less than 92 per cent. of fixed carbon. In view of the foregoing testimony and decisions this court is disinclined to disturb the decisions of the board on the question of whether anthracite coals contained less than 92 per cent. of fixed carbon. Indeed, such finding, unless additional evidence is brought in for the consideration of the court or where the finding is plainly unsupported by the evidence, is not reviewable. Leerburger v. United States (C. C.) 113 Fed. 976; Vandiver v. United States, 156 Fed. 961, 84 C. C. A. 522; Apgar v. United States, 78 Fed. 332, 24 C. C. A. 113.

The next question is whether the act of January 15, 1903, is retroactive. The words "shall not hereafter be construed to authorize the imposition of any duty on anthracite coal" can have no relation to past importations, and the criticism by the importer of the phrase quoted is not maintainable. It is inconceivable that Congress, by the use of the word "hereafter," intended to impart to it a past application. The statute was enacted after the importations of the coal in question, and the language used cannot be construed differently than to authorize a refund or rebate of duties for one year following the passage of the act. Hence the provision under which the assessments on coal were theretofore levied cannot be construed as to future importations so as not to authorize the assessment of any duty on anthracite coal. I think that if Congress had intended to authorize a refund of duties

on importations upon which the right to levy duties had attached, it would have expressed such intention in plain words. Reading the statute in its ordinary sense, it seems to me obvious that any other construction is precluded than that no duty would be imposed or levied on anthracite coal from and after the passage of the act. Such a construction of section 2 seems to me to be entirely in consonance with section 1, which, as has been stated, empowers the Secretary of the Treasury to make the rebate for the period of one year following the enactment.

The decision of the board is affirmed.