SMITH v. RHEINSTROM et al.

(Circuit Court of Appeals, Sixth Circuit. February 5, 1895.)

No. 206.

CUSTOMS DUTIES—CHERRY JUICE.

A preparation of cherry juice, made by subjecting the natural juice to heat in a vacuum, to eliminate the watery parts, and adding 17 per cent. of alcohol, such preparation being thicker, darker, heavier, and stronger than the natural juice, is a different article from the cherry juice known in trade and commerce at the time of the passage of the tariff act of October 1, 1890, and subjected by section 1, par. 339, of that act to a duty of 60 cents per gallon; and such article is dutiable, as an alcoholic compound, under section 1, par. 8, at $2 per gallon and 25 per cent. ad valorem. 60 Fed. 599, reversed.

Appeal from the Circuit Court of the United States for the Western Division of the Southern District of Ohio.

This was an application by the surveyor of customs, acting as collector at the port of Cincinnati, to review a decision of the board of general appraisers reversing the decision of the surveyor relative to the duties upon certain merchandise imported by Rheinstrom Bros. The circuit court sustained the decision of the board of general appraisers. 60 Fed. 599. The surveyor appeals.

Rheinstrom Bros. imported into the United States from Germany, in 1892, 14 casks of an article invoiced to them as cherry juice, and so entered at the port of Cincinnati. It was assessed by the surveyor under Schedule A, § 1, par. 8, of the act of October 1, 1890, as an alcoholic compound not specially provided for, at two dollars a gallon and 25 per cent. ad valorem. Against this action the importers duly protested and appealed to the board of general appraisers. Their contention was that the article in question was cherry juice containing not more than 18 per cent. of alcohol, and, as such, dutiable under Schedule H, par. 339, of said act, at 60 cents a gallon; or that, if it did not come under that specific description, then it most resembled in material, quality, texture, or the use to which it might be applied the enumerated article cherry juice, and was consequently chargeable with the same rate of duty as cherry juice, in accordance with the provisions of section 5 of that act. The board of general appraisers adopted the first alternative suggested by the importers, and reversed the act of the surveyor holding that the article in question was cherry juice containing not more than 18 per cent. of alcohol. From this decision an appeal was taken to the circuit court, where the action of the board of appraisers was sustained. The paragraphs and sections of the act of October 1, 1890 (26 Stat. 567 et seq.), involved in this controversy, are as follows: Section 1, par. 8: "Alcoholic compounds not specially provided for in this act, $2.00 per gallon and twenty-five per cent. ad valorem." Section 1, par. 339: "Cherry juice and prune juice, or prune wine, and other fruit juices not specially provided for in this act, containing not more than eighteen per cent. of alcohol, sixty cents per gallon. If containing more than eighteen per cent. of alcohol,

$2.50 per proof gallon." Section 5: "That each and every imported article not enumerated in this act, which is similar either in material, quality, texture, or the use to which it may be applied to any article enumerated in this act as chargeable with duty, shall pay the same rate of duty which is levied on the enumerated article which it most resembled in any of the particulars before mentioned; and if any non-enumerated article equally resembles two or more enumerated articles on which different rates of duty are chargeable, there shall be levied on said non-enumerated article the same rate of duty as is chargeable on the article which it resembles, paying the highest rate of duty." Cherry juice was at the time of the adoption of the act of October 1, 1890, a well-recognized fruit juice. It had been known in the trade and commerce of the country for many years, and had a well-defined meaning in the trade. It was the natural juice of the cherry manufactured by expression and mixed with alcohol in a sufficient quantity, not exceeding 18 per cent., to preserve it and prevent its fermentation. It was worth from 23 to 25 cents a gallon, and was used for the purpose of imparting the flavor of cherry to cordials and liquors manufactured in rectifying and compounding houses. The article in this case was not known at the time of the passage of the act of 1890. It was made from the natural juice of the cherry by subjecting it to heat in a vacuum, and eliminating the watery parts, reducing five gallons of the natural cherry juice to one gallon of the product, and adding 17 per cent. of alcohol. It was thicker and darker in color than cherry juice, and syrup-like. Its specific gravity was much greater, and its selling price was, instead of 30 cents, $1.10 a gallon. Its use is the same as that of natural cherry juice, and it may be used in its imported condition, or may be thinned by the addition of water. In strength, one gallon of the article is equal to four gallons of the cherry juice of commerce as it was known when the McKinley bill was passed.

Harlan Cleveland, U. S. Atty., for appellant.

Jacob Shroder, for appellees.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

TAFT, Circuit Judge (after stating the facts). In our opinion, the judgment of the court below must be reversed. The main question is whether the article in question is cherry juice as it was known at the time of the passage of the act of 1890. Cherry juice then had a well-known commercial meaning. It was the natural juice of the cherry obtained by expression, with sufficient alcohol added to keep it from fermentation. The present article is not natural cherry juice with a certain per cent. of alcohol added, but it is a substance which is produced by taking natural cherry juice, and subjecting it to a process by which much of the water present in natural cherry juice is evaporated, and we have an article four times stronger than the natural cherry juice for all the purposes to which natural cherry juice is adapted,—darker in color, of less fluidity, and of greater specific gravity. The cherry juice of commerce in 1890 was valued at 30 cents a gallon; this article is valued at $1.10 a gallon. We have no doubt that, having regard to the difference in color, weight, strength as a flavoring ingredient, and cost, it is a different article for dutiable purposes than cherry juice. The juice of vegetables or fruit is nothing but the sap obtained by expression. If the sap is subjected to heat and evaporation, the article thus produced is generally understood to be a different thing from the sap. Thus, the sap of the sugar maple is different from the molasses which is obtained from the sap by boiling, and no one would think of includ-

ing under the term "sap," if used in the tariff act, the molasses made therefrom. It is true that, for want of a better name, this is called "concentrated cherry juice." It has not been introduced generally enough into commerce to lead to a designation of it by a name which differentiates it from cherry juice other than by adding an adjective descriptive of the change. But concentrated cherry juice is different from cherry juice as molasses is different from sap, and the difference in the latter case would be quite as great even if molasses were called concentrated sap instead of molasses. Confessedly, this is a new article, one never before used in commerce. What we have to decide is whether its qualities are such as justly to prevent its being taxed as the thing from which it is made. This must depend, of course, upon the amount of change to which the original article has been subjected to make the new article. It is a question of degree. The degree of change in the quadrupling of the flavoring strength of the original article, and its market price, considered in connection with the chemical change which takes place by the elimination of so large a part of its previous watery element, is quite sufficient to make a different article from that from which it was produced. The learned judge in the court below seemed to think that the issue turned upon the question whether the particular process used in the concentration of the original cherry juice made what is technically known as a "flavoring extract." While it would be of assistance in showing that the article in question is different for purposes of taxation from that from which it was made, if it be properly defined to be a flavoring extract, the question, after all, is not whether it is a flavoring extract, but whether it is something different from the article called "cherry juice" by congress in the act of 1890; and, for the reasons stated, we think it is.

The next question is what the classification of this article shall be if it is not cherry juice. It certainly is an alcoholic compound, because it is compounded of alcohol and some other ingredient. Attempt was made in the evidence to show that "alcoholic compound," in the trade, meant a compound of alcohol in which the alcohol was used as a stimulant; but it failed. There was no evidence of any weight at all to show that the term "alcoholic compound" had a commercial meaning different from its ordinary meaning. It was not shown to be a term used in commerce with a peculiar commercial significance. If this was an alcoholic compound, then it was an enumerated article within the eighth paragraph of the first section of the act quoted above, and was thereby made subject to the tax of two dollars per gallon and 25 per cent. ad valorem. If it was such an enumerated article, then it could not come within section 5 of the act of October 1, 1890, because that section applies only to an imported article not enumerated in the act. Arthur v. Sussfield, 96 U. S. 128; Arthur's Ex'rs v. Butterfield, 125 U. S. 70, 8 Sup. Ct. 714. The classification made by the surveyor, acting as collector, in this case, was therefore right, and the article in question should have paid the tax of two dollars per gallon and 25 per cent. ad valorem. This conclusion makes it unnecessary to consider the contention that the classification of the collector should be sus-

tained, because the act of the importer was a fraudulent evasion of the provisions of the tariff act.

The judgment of the circuit court is reversed, at the costs of the appellees.