AMERICAN EXPRESS CO. *v.* UNITED STATES (No. 434).[1]

FEATHER BOAS UNDER TARIFF ACT OF 1897.

Boas made of feathers strung together upon cotton cords differ, of course, from the constituent parts of the boas so made, but avoiding a manifest incongruity if the law were otherwise construed, they must be taken to be like feathers in materials, quality, texture, and the use to which they may be applied, and they were properly held dutiable in similitude as feathers under section 7, tariff act of 1897.

## United States Court of Customs Appeals, May 8, 1911.

APPEAL from Board of United States General Appraisers, Abstract 22845 (T. D. 30410).

[Affirmed.]

*John Giblon Duffy* (*Joseph G. Kammerlohr* of counsel) for appellant.
*D. Frank Lloyd,* Assistant Attorney General (*Frank L. Lawrence* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

In the month of October, 1908, the appellants imported into this country a consignment of feather boas, which were made of feathers strung together upon cotton cords. These articles are used for women's wear, and under the above name are familiar to the public as well as to the trade. The collector held the importation to be dutiable at 50 per cent ad valorem under section 7, act of 1897, by similitude to manufactures of feathers. The appellants protested against this classification, and contended that the boas should be assessed at 20 per cent ad valorem as manufactured articles not enumerated in the law, and therefore falling within the appropriate provision of section 6 of the act. The protest was duly heard upon evidence by the board, and the ruling of the collector was sustained. The appellants now pray for a reversal of the board's decision.

The facts in the case are few and undisputed. The boa in question is composed entirely of feathers and a cotton cord, by means of which the feathers are tied into a strand; the cord itself is of relatively insignificant value and serves no other purpose than that already stated. The only issue in the case is as to the correct classification of such an article under the tariff law of 1897.

There are three parts of that act which are referred to in discussing this issue. They are paragraph 425, and sections 6 and 7. They separately read as follows:

425. Feathers and downs of all kinds, including bird skins or parts thereof with the feathers on, crude or not dressed, colored, or otherwise advanced or manufactured in any manner, not specially provided for in this act, fifteen per centum ad valorem;

---

[1] Reported in T. D. 31591 (20 Treas. Dec., 1003).

when dressed, colored, or otherwise advanced or manufactured in any manner, including quilts of down and other manufactures of down, and also dressed and finished birds suitable for millinery ornaments, and artificial or ornamental feathers, fruits, grains, leaves, flowers, and stems or parts thereof, of whatever material composed, not specially provided for in this act, fifty per centum ad valorem.

SEC. 6. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles, not enumerated or provided for in this act, a duty of ten per centum ad valorem, and on all articles manufactured, in whole or in part, not provided for in this act, a duty of twenty per centum ad valorem.

SEC. 7. That each and every imported article, not enumerated in this act, which is similar, either in material, quality, texture, or the use to which it may be applied, to any article enumerated in this act as chargeable with duty, shall pay the same rate of duty which is levied on the enumerated article which it most resembles in any of the particulars before mentioned; and if any nonenumerated article equally resembles two or more enumerated articles on which different rates of duty are chargeable, there shall be levied on such nonenumerated article the same rate of duty as is chargeable on the article which it resembles paying the highest rate of duty; and on articles not enumerated, manufactured of two or more materials, the duty shall be assessed at the highest rate at which the same would be chargeable if composed wholly of the component material thereof of chief value; and the words "component material of chief value," wherever used in this act, shall be held to mean that component material which shall exceed in value any other single component material of the article; and the value of each component material shall be determined by the ascertained value of such material in its condition as found in the article. If two or more rates of duty shall be applicable to any imported article, it shall pay duty at the highest of such rates.

It will be observed that paragraph 425 provides for a duty of 50 per cent ad valorem upon feathers of all kinds when dressed, colored, or otherwise advanced or manufactured in any manner. This provision, however, if taken alone would not include the importations at bar, because they are no longer feathers, nor are they manufactures of feathers only; but they are rather manufactures composed of two separate constituent materials. Such a manufacture as this, formed by the combination of feathers and cord, where both materials form essential and substantial parts of the manufactured article, is no longer feathers or cord, nor is it properly a manufacture of either. These articles therefore do not come directly within the enumerations of paragraph 425.

The contention of the appellants is that this fact places the articles within the provisions of section 6 as unenumerated manufactures dutiable at only 20 per cent ad valorem. On the other hand, the Government contends that section 7 controls and that the articles are dutiable at 50 per cent ad valorem either under the similitude clause in that section or under the clause therein governing manufactures composed of two or more materials.

If the interpretation maintained by the appellants should prevail, it would confessedly produce a very anomalous result. For in such case dressed and improved feathers imported as such would be dutiable at 50 per cent ad valorem, whereas similar feathers joined

together without other change in their condition and either with or without the addition of other materials of lesser value would be dutiable at only 20 per cent ad valorem. And this would be the case even though the feathers thus united nevertheless maintained otherwise their several forms and conditions as feathers and could again be separated into individual feathers without injury to their structure. In other words, such dressed feathers if imported in mass would be dutiable at 50 per cent ad valorem, but if tied together with a thread so as to be useful or ornamental together, but still capable of separation, they would be dutiable at only 20 per cent ad valorem. Such provisions appearing within the same statute would be incongruous and unreasonable, and the result would be inconsistent with the tenor and purposes of the act. The court is not entitled to legislate new terms into the law in order to prevent such a result, but on the other hand such an interpretation should be adopted as will avoid a manifestly unintended result, if it can be done without violence to the language of the enactment.

Turning then to section 7, above quoted, two provisions are found which bear upon the question. The first is the similitude clause, which provides that every imported article not enumerated in the act, which is similar either in material, quality, texture, or the use to which it may be applied to any article therein enumerated as chargeable with duty, shall pay the same rate of duty which is levied upon the enumerated article which it most resembles in any of the particulars before mentioned. Now, these boas, while constituting a new article composed of feathers and string, are yet similar in material and quality to feathers, or to a manufacture of feathers, for the feathers so predominate in their construction, appearance, and use, that the manufacture does not change the feathers, but simply collects and applies them as such. The string by which the feathers are united serves a purpose similar to that of an outside wrapper which would hold separated feathers in bulk. An inspection of the exhibit discloses the fact that the string itself is so covered by the feathers as to be quite invisible. It does not change the character of the feathers, and its use is so subordinate to theirs that the combined product, while no longer feathers alone, may yet properly be held to be similar to feathers in materials, quality, texture, and the use to which it may be applied. The articles would also of course be similar to a manufacture of feathers. The similitude clause does not require exact identity between the related articles; such identity indeed would make that clause inapplicable. The clause applies only where there are differences between the articles, and yet also such points of identity as to make them like one another in some of the particulars named by the statute.

The second provision of section 7, which has been above referred to, provides that on unenumerated articles manufactured of two or more materials the duty shall be assessed at the highest rate at which the same would be chargeable if wholly composed of the component material thereof of chief value. These articles were concededly not specifically enumerated in the act, and they are composed of two materials, of which feathers are the more valuable. Therefore, according to the provision last above cited, they were dutiable at the same rate as if manufactured wholly of feathers. That is to say, they should be assessed as if they were manufactures of feathers. Now it is true that the term "manufactures of feathers" does not appear in those words in the act. However, paragraph 425 enumerates feathers of all kinds "when dressed, colored, or otherwise advanced, or manufactured in any manner." It is argued by appellants that these terms refer only to such means and results as improve the feathers themselves, and that manufactured feathers are simply feathers finished in quality by treatment. But while this meaning is certainly contained within the term, nevertheless it is not the only meaning which may fairly be given it. Feathers of all kinds, when dressed or colored, or when otherwise—that is, by processes additional to dressing or coloring—they are advanced or manufactured in any manner, are included within this classification, and it is obviously designed to be a very comprehensive one. The broad provision for all processes whereby the feathers may be advanced or manufactured in any manner may well include the simple process of threading the feathers upon a string. This construction does no violence to the language of the provision and makes it consistent with the other provisions of the law which are within the same subject matter.

By adopting this interpretation, dressed and finished feathers would be dutiable at 50 per cent ad valorem; such feathers if united for use without the addition of any other material would bear the same rate. If they were combined with other materials in the manufacture of a new article, such article, unless specifically enumerated, would be dutiable at the rate chargeable to a manufacture composed wholly of the component material of chief value. It should be remembered that these statements all apply to the act of 1897.

The Berlinger case, cited by appellants, does not conflict with this conclusion. In that case the articles were manufactured of feathers, wire, cotton, and buckram, and therefore could not be called manufactures of any of the component materials alone. They were therefore classified under paragraph 193 as manufactures in part of metal, not otherwise provided for. That decision, when limited to the actual issue involved, does not necessarily imply that there was no provision in the act for manufactures of feathers, any more than that

there was no provision for manufactures of metal, cotton, or buck-ram. The articles in that case, because of their composition, could not fall within any such single classification; and the court was there-fore not required to pass upon any issue involved in the present case.

The decision of the board is *affirmed.*