ROLLAND FRÈRES (INC.) *v.* UNITED STATES (No. 2135).[1]

1. IDENTITY OF MATERIAL IS NOT SIMILITUDE.

The similitude paragraph of the tariff act contemplates similarity, not identity of material.

2. CONSTRUCTION, PARAGRAPH 319, TARIFF ACT OF 1913—ARTIFICIAL SILK—HYDROCELLULOSE.

Paragraph 319, tariff act of 1913, subjects to duty artificial silk; that is to say, hydrocellulose in the form of yarns, threads, or filaments, and of articles or fabrics in chief value of such yarns, threads, fibers, or filaments. Congress having seen fit to provide for hydrocellulose in its condition as artificial silk, it can not be held that such a provision was intended to cover by similitude of material hydrocellulose not in that condition.

3. SIMILITUDE—ARTIFICIAL SILK—CELLOPHANE—VISCA.

There is no similitude within the meaning of the tariff act between hydrocellulose in narrow bands, strips, or ribbons (cellophane and visca) and hydrocellulose in the form of yarn, threads, fibers, or filaments (artificial silk).

4. MANUFACTURES OF CELLOPHANE AND VISCA.

Sheets, bands, and ribbons of visca or cellophane, whether crimped or not, are dutiable by similitude with gelatin manufactures under paragraph 34, tariff act of 1913, rather than with artificial silk manufactures under paragraph 319. Braids, plaits, and hats of visca or cellophane are dutiable by similitude with such articles made of straw under paragraph 335, rather than with manufactures of artificial silk under paragraph 319. Other hat materials made by winding cellophane bands around long strips of cloth or paper are dutiable at 25 per cent ad valorem by similitude with either manufactures of gelatin under paragraph 34 or manufactures of straw under paragraph 368. Partly manufactured hats composed of cellophane braids, plaits, or bands wound around cloth or paper are dutiable by similitude with the hats of straw, chip, grass, or palm leaf of paragraph 335. Millinery material made of cellophane strips held together by cotton or artificial silk threads are dutiable at 25 per cent ad valorem by similitude with either manufactures of gelatin under paragraph 34 or manufactures of straw under paragraph 368. Artificial flowers of cellophane are dutiable as artificial flowers under paragraph 347.

[Modified.]

*Brooks & Brooks* for appellant.

*William W. Hoppin,* Assistant Attorney General (*Samuel Isenschmid,* special attorney, of counsel), for the United States.

---

[1] T. D. 39141.

[Oral argument February 23, 1922, by Mr. Place and Mr. Isenschmid.]

Before SMITH, BARBER, and MARTIN, Associate Judges; DE VRIES, Presiding Judge, participating in the decision by agreement of counsel.

SMITH, Judge, delivered the opinion of the court:

"Tams," crowns, hats, hat braids, "all-over" braids, bands, strips, sheets, flowers, and ornaments, some made of a material called "visca" and others of "cellophane," were classified by the collector of customs either as filaments of artificial silk or as articles composed in chief value of yarns, threads, filaments, or fibers of artificial silk. The articles classified as "artificial silk in the form of filaments," were assessed for duty at 35 per cent ad valorem under paragraph 319 of the tariff act of 1913, and those classified as composed in chief value of yarns, threads, filaments, or fibers of artificial silk, were subjected to the duty of 60 per cent ad valorem prescribed by that paragraph. Paragraph 319 in so far as it is pertinent to the case reads as follows:

319. Yarns, threads, filaments of artificial or imitation silk, * * * by whatever name known, and by whatever process made, 35 per cent ad valorem; beltings, cords, tassels, ribbons, or other articles or fabrics composed wholly or in chief value of yarns, threads, filaments, or fibers of artificial or imitation silk * * * or of yarns, threads, filaments or fibers of artificial or imitation silk, * * * by whatever name known, and by whatever process made, 60 per cent ad valorem.

The importer protested first, that directly or by similitude the goods covered by typical protest 934448 were dutiable either at 15 per cent ad valorem under paragraph 385 as nonenumerated manufactured articles, or at 25 per cent ad valorem under paragraph 34 as manufactures of gelatin; second, that directly or by similitude the articles covered by typical protest 936314 were dutiable (a) under paragraph 368 either at 15 per cent ad valorem as manufactures of palm leaf or at 20 per cent ad valorem as manufactures of chip or at 25 per cent ad valorem as manufactures of grass, straw, or weeds; (b) under paragraph 335 as braids or plaits or hats of straw, chip, grass, or palm leaf at 15 per cent, 20 per cent, or 25 per cent ad valorem; (c) under paragraph 385 as nonenumerated manufactures at 15 per cent ad valorem; third, that directly or by similitude the goods covered by typical protest 937803 were dutiable (a) under the paragraphs already referred to, (b) under paragraph 25 at 25 per cent as compounds of pyroxylin or other cellulose esters in blocks, sheets, rods, tubes, or other forms not wholly or partly polished, (c) under paragraph 150 at 40 per cent ad valorem as fabrics, ribbons, beltings, toys, or other articles, made wholly or in chief value of tinsel, lame, or lahn. The paragraphs upon which the importer relied were, in typical protest 934448, paragraphs 34 and 385; in typical protest 936314, paragraphs 335, 368, and 385; and in typical protest 937803,

paragraphs 34, 335, and 385. Said paragraphs, in so far as pertinent, are as follows:

34. * * * manufactures of gelatin * * * 25 per centum ad valorem * * *.

335. Braids, plaits * * * composed wholly or in chief value of straw, chip, grass, palm leaf * * * suitable for making or ornamenting hats, bonnets, or hoods * * * if bleached, dyed, colored, or stained, 20 per centum ad valorem; hats, bonnets, and hoods composed wholly or in chief value of straw, chip, grass, palm leaf * * * whether wholly or partly manufactured, but not blocked or trimmed, 25 per centum ad valorem.

368. Manufactures of * * * grass, straw, and weeds, 25 per centum ad valorem; * * *.

385. That there shall be levied, collected, and paid * * * on all articles manufactured, in whole or in part, not provided for in this section, a duty of 15 per centum ad valorem.

The importation is represented by 31 exhibits. Exhibits 1, 2, and 3 are hat braids composed chiefly of lustrous flexible flat bands of visca, about one-fourth of an inch wide, braided with chip. Exhibits 4, 5, and 24 are hat braids made of highly polished flexible bands of cellophane, and Exhibits 6, 7, 8, 9, and 10 are hat materials made by winding cellophane bands around long strips of cloth or paper. Exhibits 11 and 12 are flat cellophane strips varying in width from one twenty-fifth to one-eighth of an inch, held together and parallel to one another by weaving over and under them cotton weft threads at half-inch intervals in Exhibit 11, and at 3-inch intervals in Exhibit 12. Exhibit 13 is a strip of yellow crimped or accordion-plaited cellophane about 1¾ inches wide, apparently intended for use as a millinery trimming. Exhibits 14, 15, and 31 are sheets of cellophane which are chiefly used for wrapping candies and candy boxes. Some of the sheet cellophane is used for surgical dressings and it may be cut into narrow bands or strips for the making or braiding of articles of various kinds. Exhibit 16 is a sheet of cellophane which differs from Exhibits 14, 15, and 31 in the particular that it has been crimped or accordion-plaited, and that it is probably used only for ornamental purposes or for the manufacture of ornamental articles. Exhibits 17 to 23 are strips or bands of colored cellophane varying in width from one-eighth to 1¾ inches. Exhibits 17 to 22 are narrow enough to be braided, but Exhibit 23 appears to be too wide for that purpose. Exhibit 25 represents materials having a warp of narrow crimped cellophane strips varying in width from one-sixteenth to one-eighth of an inch and held in place by weft threads of cotton or of soft-finish artificial silk. Exhibit 26 consists of four black flexible cellophane flowerlike forms and crude imitations of leaves fastened to a cellophane band apparently designed to be used as a hat trimming. Exhibits 27 and 28 are partly manufactured ladies' hats made of materials similar to the

materials represented by Exhibits 5 and 10. Exhibits 29 and 30 are artificial flowers of cellophane.

The board sustained the protest as to Exhibits 14, 15, 16, and 31, but inasmuch as they could not determine what merchandise was of the widths represented by the exhibits, the decision of the collector as to such merchandise was left undisturbed. The board ruled that Exhibits 29 and 30 were artificial flowers dutiable under paragraph 347, and that the exhibits from 17 to 23 which were narrow enough to be braided or woven were similar in material and use to yarns, threads, or filaments of artificial silk, and therefore dutiable at 35 per cent ad valorem under paragraph 319. Such of the exhibits from 17 to 23 as were too wide to be braided or woven were held to be dutiable as nonenumerated manufactured articles under paragraph 385, but as the board was unable to determine what strips required cutting in order to be braided or woven the decision of the collector was permitted to stand.

The rest of the exhibits were held by the board to be similar in material to articles or fabrics of artificial silk and therefore dutiable at 60 per cent ad valorem under paragraph 319. From the decision of the board the importer appealed.

Artificial silk, visca, and cellophane are products of hydrocellulose and hydrocellulose is manufactured by chemically treating wood pulp, cotton, or other vegetable fiber. Wood pulp, cotton, or other vegetable fiber when treated with nitric acid becomes a cellulose nitrate and cellulose nitrate is the chemical designation of pyroxylin or gun cotton. Wood pulp, cotton, or other vegetable fiber when treated with xanthic acid becomes cellulose zanthate or "viscose." Pyroxylin and viscose are both esters, which by further chemical treatment may be converted into hydrocellulose. Hydrocellulose may also be produced by applying such chemical reagents as will precipitate it out of a cupra-ammonium solution of cellulose. The evidence establishes that hydrocellulose produced by chemically treating pyroxylin is identically the same as the hydrocellulose produced by the chemical manipulation of "viscose" and that the hydrocellulose precipitated by chemical processes out of a cupra-ammonium solution is the same as that produced from pyroxylin or "viscose," with the exception that a close analysis will disclose traces of the different chemical reagents used in producing the hydrocellulose. Artificial silk, cellophane and visca are manufactures of hydrocellulose, but whether the hydrocellulose becomes artificial silk, cellophane, or visca, depends entirely on the mechanical treatment to which it is subjected in its viscous state and the form that it finally takes. If the hydrocellulose be forced through microscopic jets into a bath which coagulates the hydrocellulose threads, fibers, or filaments thus produced, the commodity is artificial silk which may be

spun, woven, knitted, or applied to any textile purpose for which cotton, wool, or true silk may be used. If the hydrocellulose be projected through a slit or slot and coagulated into bands or strips or rolled into or cut from sheets, it becomes cellophane or visca.

The goods which are the subject of appeal to this court, are either visca or cellophane, and as they are composed wholly of hydrocellulose they are not similar but identical in material with hydrocellulose which by manufacturing processes has been converted into artificial silk, that is to say, into yarns, threads, fibers, or filaments, and articles made of such yarns, threads, fibers, or filaments. Inasmuch as there is identity, not similarity of material, none of the visca or cellophane and none of the articles here involved, made of visca or cellophane, can be said to be dutiable by *similitude of material* to artificial silk or to articles made of artificial silk.

Paragraph 319 subjects to duty artificial silk; that is to say, hydrocellulose in the form of yarns, threads, or filaments and of articles or fabrics in chief value of such yarns, threads, fibers, or filaments. Congress having seen fit to provide for hydrocellulose in its condition as artificial silk, it can not be held that such a provision was intended to cover by similitude of material hydrocellulose not in that condition.—Schoenemann *v.* United States (119 Fed. 584, 586); Fensterer *v.* United States (1 Ct. Cust. Appls. 93, 100, 101; T. D. 31110); United States *v.* Fensterer & Ruhe (2 Ct. Cust. Appls. 368; T. D. 32094); Isler *v.* United States (5 Ct. Cust. Appls. 229–233; T. D. 34401); United States *v.* Neuman (6 Ct. Cust. Appls. 228, 229, 230; T. D. 35497); Strauss & Co. *v.* United States (2 Ct. Cust. Appls. 203; T. D. 31946); American Express Co. *v.* United States (2 Ct. Cust. Appls. 39–41; T. D. 31591).

To hold otherwise would subject a raw material, not specifically enumerated, to the duty specifically imposed on such a material when advanced to the status of a manufacture having a new name and fitted for a use for which the raw material was wholly unsuitable, a result the exact reverse of that generally sought by tariff legislation.

Whether the visca and narrow bands or strips of cellophane are similar *in use* to yarns, threads, fibers, or filaments of artificial silk depends altogether on whether such narrow bands or strips of cellophane or visca can be devoted to the uses peculiar to yarns, threads, or filaments, that is to say, to sewing, weaving, knitting, crocheting, tatting, embroidering, and needlework. See yarn, thread, filament, crochet, tat, embroider, and needlework, Standard Dictionary and Webster's Dictionary; United States *v.* Veit, Son & Co. (8 Ct. Cust. Appls. 290, 293, 294).

It is not claimed by the Government that visca and cellophane in sheets, narrow bands, strips, or ribbons, can be used for sewing, crocheting, tatting, or needlework, and the samples in evidence are

convincing proof that they are not fitted for such uses. The Government does contend however, that visca and cellophane in narrow bands, strips, or ribbons are suitable for weaving and knitting, but the evidence submitted does not in our opinion sustain that contention.

David Metzger testified for the Government in effect that visca, cellophane, artificial horsehair, artificial silk, straw, cotton, wool, real silk, palm leaf, raffia, grass, chip, and various other materials were used for the manufacture of millinery braids, ornaments, trimmings, and novelties; *that artificial silk was a thread and that visca was a sort of a ribbon, something flat and ribbonlike;* that visca and narrow strips of cellophane may be woven, knitted, or braided, but that they are not woven or knitted in the same way as threads or yarns of artificial silk, artificial horsehair, or cotton; that visca and cellophane can not be successfully woven or knitted as a single material, but must be interwoven with warp threads of cotton, artificial silk, or like fibers or filaments by means of guides or tubes in such a way as to bind the visca or cellophane; that visca or cellophane in strips or ribbons can not be used in the same way as cotton and that in knitting if the needle were permitted to engage visca or cellophane strips, they would break and "crack right off." He pointed out that illustrative Exhibit F composed of very fine filaments spun into a very fine thread, was *artificial silk*, but that illustrative Exhibit G, which was a *very narrow strip or ribbon, was visca.* He said that visca and cellophane could not be used as embroidery threads and that if used at all in embroidery they would have to be employed for surface ornamentation. He identified the braids represented by Exhibits 1, 2, and 3 as a combination of visca and chip "fiber," and testified that cellophane and visca as used by him "mostly resembled straw."

Joseph Brandt testified for the Government that cellophane and visca were more difficult to work than metal lame and that they could not be woven into a fabric without the use of threads and then only by introducing them into the fabric by means of tubes or warp guides, called slingers.

Joseph Rubin, another witness for the Government, stated that Exhibits 1, 2, and 3 were braids composed of visca and chip and that the chip was employed in the same manner as was visca. He said that the term visca meant an *artificial silk straw* which was used as artificial straw and had a high luster and a fineness that *resembled straw.* He said that visca was a contraction for the term "visca lame," and that if knitted with cotton it could be withdrawn without destroying the skeleton fabric of cotton, but that if the cotton were withdrawn the whole fabric "would fall apart."

We think that the testimony of these three witnesses proves to a conclusion not only that visca and cellophane in narrow bands, strips, or ribbons can not be used as a single material for weaving, knitting, or embroidering, but that there is a pronounced difference between hydrocellulose, which by manufacturing processes is converted into filaments spun into threads or made into yarns and hydrocellulose which by other manufacturing process has been given the form of visca or of cellophane in bands, strips, or ribbons. Yarns, threads, fibers, or filaments of hydrocellulose can be used just like yarns, threads, fibers, or filaments of wool, cotton, or silk and come within the statutory designation of artificial silk. Articles made from such yarns, threads, fibers, or filaments are artificial silk articles. On the other hand, hydrocellulose in the form of bands, strips, or ribbons, unlike yarns, threads, fibers, and filaments of cotton, wool, silk, or artificial silk, can not be knitted or woven as a single material and can not be used for sewing, crocheting, tatting, embroidering, or needlework. As narrow bands, strips, or ribbons of hydrocellulose can not be used substantially in the way true yarns, threads, fibers, and filaments are used and can not accomplish substantially the results produced by the use of such yarns, threads, fibers and filaments, they are not dutiable under paragraph 319 by similitude of use to artificial silk yarns, threads, fibers, or filaments.—United States *v.* Godillot & Co. (3 Ct. Cust. Appls. 128, 130; T. D. 32382); Pickhardt *v.* Merritt (132 U. S. 252, 258).

In view of the fact that visca and strips, bands, and ribbons of cellophane can not be used as a single material for any of the purposes for which yarns, threads, fibers, or filaments of artificial silk can be and are used, it is evident that articles made of visca or of cellophane can not be like or similar to articles made of yarns, threads, or fibers of artificial silk. Both classes of material may be used for the manufacture of braids, but the braids of artificial silk differ radically in appearance, quality, texture, and use from the braids of visca or cellophane. Indeed braids of visca and cellophane far from resembling braids of artificial silk more nearly resemble braids of straw, chip, grass, or palm leaf. In fact, the samples in evidence fully establish that none of the products of visca or cellophane are like articles of artificial silk.

The testimony in the case is uncontradicted that in quality and texture cellophane in sheets very closely resembles gelatin in sheets, rendered resistant to water by manufacturing processes. Although the gelatin sheets in evidence are manufactured from animal tissue, and the exhibits of visca and of cellophane are made from vegetable fiber, both products are so much alike in appearance, quality, and texture that they appear to be of the same material, and it is difficult, if not impossible, for the lay eye to distinguish one from the other.

Gelatin in sheets, like cellophane in sheets, is sold to candy manufacturers for the wrapping of candies and candy boxes. The exhibits and illustrative exhibits in evidence prove beyond question that in appearance, quality, and texture visca and cellophane sheets, bands, and ribbons bear a much greater resemblance to gelatin sheets, strips, bands, or ribbons than they do to artificial silk. The visca and narrow strips, bands, and ribbons of cellophane are also more like straw than artificial silk in material, quality, and the use to which they are put—indeed their resemblance to straw is so marked that they are called artificial straw. They can not, however, be subjected to duty as straw by similitude inasmuch as straw is on the free list. (Par. 386, tariff act 1913.) As visca and sheets, strips, bands, and ribbons of cellophane resemble in appearance, quality, and texture articles having the same form composed of gelatin, we think that the visca and the sheets, strips, bands, and ribbons of cellophane, whether crimped or not, covered by typical protests 934448 and 937803, are dutiable under paragraph 34 because of their similitude to manufactures of gelatin.

Visca and narrow strips, bands, or ribbons of cellophane are used in substantially the same way as straw for the manufacture of braids, plaits, hats, and other articles, and the manufactures of such visca and narrow strips, bands, or ribbons of cellophane are quite similar to manufactures of straw. As braids, plaits, and hats of straw are provided for eo nomine, however, in paragraph 335, braids, plaits, and hats made of visca or of narrow strips, bands, or ribbons of cellophane are dutiable under that paragraph by similitude. All the other articles made of visca and narrow strips, bands, or ribbons of cellophane are composed of a material similar to gelatin in appearance, quality, and texture, and to straw in material, quality, and use. Such articles are dutiable at 25 per cent ad valorem either under paragraph 34 by similitude to manufactures of gelatin or under paragraph 368 by similitude to manufactures of straw.

We find, first, that the colored hat braids represented by Exhibits 1, 2, 3, 4, 5, and 24 are dutiable at 20 per cent ad valorem under paragraph 335 because of their similitude to dyed or colored hat braids of straw; second, that the hat materials made by winding cellophane bands around long strips of cloth or paper in the manner shown by Exhibits 6, 7, 8, 9, and 10 are dutiable at 25 per cent ad valorem either by similitude to manufactures of gelatin under paragraph 34 or by similitude to manufactures of straw under paragraph 368; third, that the partly manufactured hats represented by Exhibits 27 and 28 composed of cellophane braids, cellophane plaits, or of cellophane bands wound around cloth or paper are dutiable at 25 per cent ad valorem because of their similitude to the hats provided for in paragraph 335; fourth, that the sheets and wide bands or

ribbons of cellophane whether crimped or not, represented by Exhibits 13, 14, 15, 16, 23, and 31, are similar in appearance, quality, and texture to sheets, wide bands, or ribbons of gelatin and are therefore dutiable at 25 per cent ad valorem under paragraph 34 by reason of their similitude to gelatin made resistant to water by manufacturing processes; fifth, that the articles represented by Exhibits 11, 12, and 25 and composed of narrow strips of plain or crimped cellophane held in place by threads of cotton or of artificial silk are dutiable at 25 per cent ad valorem either under paragraph 34 by reason of their similitude to manufactures of gelatin or under paragraph 368 by reason of their similitude to manufactures of straw; sixth, that the materials represented by Exhibits 17, 18, 19, 20, 21, and 22 are dutiable at 25 per cent ad valorem under paragraph 34 by reason of their similitude in appearance, quality, and texture to narrow strips, bands, or ribbons of gelatin, made resistant to water by manufacturing processes; seventh, that the goods represented by Exhibits 26, 29, and 30 are dutiable at 60 per cent ad valorem under paragraph 347, either as artificial leaves, stems, and flowers or as articles composed in chief value of leaves, stems, and flowers.

The decision of the board overruling the protest as to Exhibits 26, 29, and 30, and the merchandise covered thereby, is affirmed. As to the rest of the exhibits and the merchandise represented thereby, the decision of the board is reversed. *Modified.*