BIRN & WACHENHEIM (UNITED STATES IMPLEADED) *v.* DU PONT CELLOPHANE CO. (INC.), AN AMERICAN MANUFACTURER (NO. 3196)[1]

HENLE WAX PAPER MFG. CO., INC. (UNITED STATES IMPLEADED) *v.* DU PONT CELLOPHANE CO. (INC.), AN AMERICAN MANUFACTURER (NO. 3197)

DU PONT CELLOPHANE CO. (INC.), AN AMERICAN MANUFACTURER *v.* BIRN & WACHENHEIM (UNITED STATES IMPLEADED) (NO. 3204)

DU PONT CELLOPHANE CO. (INC.), AN AMERICAN MANUFACTURER *v.* HENLE WAX PAPER MANUFACTURING CO., INC. (UNITED STATES IMPLEADED) (NO. 3205)

United States Court of Customs and Patent Appeals, June 12, 1929

*Charles D. Lawrence*, Assistant Attorney General, for the United States.
*Walden & Webster* (*Edward F. Jordan* of counsel) for Birn & Wachenheim.
*James W. Bevans* for Henle Wax Paper Mfg. Co.
*Curie, Lane & Wallace* (*Thomas M. Lane* of counsel) for Du Pont Cellophane Co.

<hr>

[1] T. D. 43454.

[Oral argument May 21, 1929, by Mr. Jordan, Mr. Bevans, and Mr. Lane]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

These two appeals and two cross appeals involve the dutiable classification of two importations. In the case of Birn & Wachenheim, the importation consisted of thin, highly transparent sheets of cellulose material sold under the trade name of fenestra and used for wrapping tobacco, candy, and food products. In the *Henle Wax Paper Mfg. Co. (Inc.)* case, the importation was in all material respects similar to the fenestra and was known as transparit. The fenestra and transparit were classified for duty by the collector as gelatin by similitude and assessed at 25 per centum ad valorem under paragraph 42 of the Tariff Act of 1922, the collector's reports stating that such action was taken in accordance with the decision of this court in *Rolland Frères* v. *United States*, 11 Ct. Cust. Appls. 321, T. D. 39141, in which case this court held so-called cellophane in sheets to be a nonenumerated article but dutiable by similitude under the Tariff Act of 1913 as gelatin sheets.

The Du Pont Cellophane Co. (Inc.), an American manufacturer, under the authority of section 516 of the Tariff Act of 1922, protested the classification in the two cases above mentioned. The court below sustained the protests and held the merchandise to be dutiable under paragraph 31, Tariff Act of 1922, as a compound of cellulose in sheets, made into finished or partly finished articles and dutiable at 60 per centum ad valorem. Appeals and cross appeals to this court were taken from such action of the court below.

It is conceded that cellophane, the product of the American manufacturer, protestant, is in all respects identical with the imported product; that it has the same component materials and is made in substantially the same way. It is stipulated that the cellulose sheets under consideration consist of approximately 80 per centum cellulosic material and 12½ per centum glycerin, with the remaining 7½ per centum consisting of various chemical impurities, and that the cellulosic material is the component of chief value. It is not contended that the impurities affect the classification in any respect. There is no material disagreement as to the process of manufacture or the components of the sheets.

From the stipulations and the record the following facts, in substance, are shown: The principal raw material is pure cellulose in the form of wood pulp. This is reduced by a series of chemical processes to cellulose xanthate, a chemical compound, which is then dissolved into a viscous or semifluid mass, called viscose, at which stage the substance is a cellulose ester in solution. The viscose is then cast into the film, which, at the moment it takes form, is essentially a

film of the cellulose ester solution called viscose, but which is at once passed through a coagulating bath which breaks down the ester in the film and restores it to the condition of cellulose. After coagulation the film is subjected to a series of purifying and bleaching baths, which remove impurities and discolorations and finally to a glycerin bath which combines the cellulose hydrate with the quantity of glycerin required to give the sheet the quality of flexibility that fits it for commercial use. The film is then passed through squeezing rollers to remove excess liquid and heated rollers to dry it and finally comes off of the machine in rolls 3,000 to 5,000 feet long and about 36 inches in width and is later cut to various commercial sizes. The process of making the finished sheet is, from the viscose stage on, a continuous one, carried out in the same machine.

It is the contention of the American producer, with which the court below unanimously agreed, that the importation is a compound of cellulose in sheets, provided for in paragraph 31. A majority of the court below found that it was a compound of cellulose in sheets made into a finished article, dutiable at 60 per centum ad valorem under the second bracket of said paragraph. A minority of the court below, and counsel for the American producer, are of the opinion that it is a compound of cellulose in sheets, provided for in the first bracket of paragraph 31 at 40 cents per pound.

Both importers make the following contentions: (1) That the imported merchandise is not a compound within the common or ordinary meaning of that term; (2) that it is not a compound of cellulose within the meaning of the term "compound" as used in paragraph 31; (3) that it is not a finished article composed in chief value of a compound of cellulose; (4) that whether or not it is a compound within the common or ordinary meaning of that term, it is nevertheless not dutiable under paragraph 31 because it is made from the same materials as are the "products of cellulose" provided for in paragraph 1213, and Congress has, by the express language of that provision, decreed that such materials are not compounded; (5) that the presumption of correctness attaching to the classification of the collector has not been overcome, and that it is amply supported by uncontradicted evidence.

The pertinent portions of the tariff act under consideration follow:

PAR. 31. Compounds of pyroxylin, of other cellulose esters or ethers, or of cellulose, by whatever name known (except compounds of cellulose known as vulcanized or hard fiber), in blocks, sheets, rods, tubes, or other forms, and not made into finished or partly finished articles, 40 cents per pound; made into finished or partly finished articles, of which any of the foregoing is the component material of chief value, 60 per centum ad valorem: *Provided*, That all such articles (except photographic and moving-picture films), whether or not more specifically provided for elsewhere, shall be dutiable under this paragraph.

PAR. 42. * * * casein glue, agar agar, isinglass, and other fish sounds, cleaned, split, or otherwise prepared, and manufactures, wholly or in chief value of gelatin, glue or glue size, 25 per centum ad valorem.

PAR. 1213. * * * products of cellulose, not compounded, whether known as visca, cellophane, or by any other name, such as are ordinarily used in braiding or weaving and in imitation of silk, straw, or similar substances, 55 cents per pound; but none of the foregoing * * * products of cellulose shall pay a less rate of duty than 45 per centum ad valorem.

It seems to us that the proper conclusion in this case depends upon the determination of whether the importation is or is not within the common meaning a compound of cellulose in any of the forms prescribed in paragraph 31. If it is such a compound, obviously, the case of *Rolland Frères, supra*, which, under the Tariff Act of 1913 held cellophane to be dutiable by similitude to gelatin sheets, has no application here. The Tariff Act of 1913 contained no provision for compounds of cellulose. See par. 34.

The difference between opposing counsel in this case seems to rest entirely upon the meaning of the word "compound," and both sides cite many definitions and authorities. The importers in arguments and briefs contend for a definition of the word "compound" which would exclude an admixture of a solid or solids with a liquid ingredient.

Of the many definitions cited for the word "compound" (and in each definition we find different shades of meaning) it is sufficient to quote the definition given in the Century Dictionary and Cyclopedia:

Compound, a. and n. II n. 1. Something produced by combining two or more ingredients, parts, or elements; a combination of parts or principles forming a whole.

Compound, v. 1. trans. 3. To form by uniting or mixing two or more elements or materials.

4. To make; constitute; form; establish.

In *United States* v. *Stone & Downer Co.*, 175 Fed. 33, where "alcoholic compounds" were under consideration, the court held that a mixture of fine-cut herbs and alcohol was an alcoholic compound, although the alcohol merely served as a preservative in the importation of the leaves and was also used with leaves as a tincture. There the court said (p. 37):

Of course, the word "compound," under some circumstances, has a limited application. Pharmacists ordinarily apply it to a mere mixing of different substances, especially when comminuted with the mortar and pestle. Chemists sometimes, although not ordinarily, use it when two substances are chemically united so as to make a new substance; but, according to the lexicographers, and according to well-known understanding, it covers any "union or mixture of elements, ingredients, or parts." Webster's International Dictionary (1904), the word "compound."

To the same effect is the case of *Smith* v. *Rheinstrom*, 65 Fed. 984, and the case of *Mackie.* v. *Erhardt*, 77 Fed. 610.

In *Monticelli Bros. et al.* v. *United States*, 8 Ct. Cust. Appls. 21, T. D. 37162, where "medicinal compounds" were under consideration, this court, at page 24, said:

This involves the primary inquiry as to what may be articles similar to compounds or combinations. The citation of authorities is unnecessary to satisfy the mind that a compound or combination in the general understanding is necessarily something composed of more than one component material. The words themselves imply that requirement, because a compound or combination is a thing which results from the act of compounding or combining, and that obviously is the putting together or mixing in some manner of the materials requisite therefor.

Numerous other authorities are cited to the same effect.

The decision of this court in *Olivier Straw Goods Corporation* v. *United States*, 15 Ct. Cust. Appls. 22, T. D. 42134, relied upon by importers, has little, if any, bearing upon the issues at bar. In the Olivier case the cellophane strips, used for weaving, etc., contained sulphur, sodium, and water. The braids had also been dyed. Importer contended that this made the merchandise a compound. There was conflict in the testimony as to whether the sulphur and sodium were impurities and were not intentionally added substances. The Board of General Appraisers (now the United States Customs Court) found that the merchandise was not a compound, and this court declined to disturb its finding upon the conflicting testimony.

In the case at bar the glycerin becomes an integral component part of the imported merchandise. The mixture of cellulose and glycerin was intentional and not incidental. See *Aetna Explosives Co.* v. *United States*, 9 Ct. Cust. Appls. 298, T. D. 38238. After the combination or combining, a new commercial product was brought into existence. The glycerin which found its way into the cellulose made the product more flexible and gave "it greater pliability and greater extensibility." The record shows that cellulose, such as existed before passing through the glycerin bath, possesses a particular susceptibility to a complete union with glycerin; that the bath is not a superficial surface coating, but that by it the glycerin is incorporated into the substance of the cellulose and is used to soften the product; that the cellulose is not dissolved and no chemical action is shown to have taken place in the molecules of the cells by reason of the impregnation with glycerin, but it is shown that sheets of cellulose as thick as blotting paper and masses of cellulose as large as a loaf of bread become impregnated with and softened with glycerin and will, when so impregnated, cut "very much as you could cut cheese." It is shown that the glycerin will not evaporate and that it becomes a permanent component of the compound. In this respect it is unlike the same material when water has been applied.

In our view it makes no difference by what process the compounding was brought about or at what time it took place, if, in fact,

the product is the intentional result of the admixture of more than one ingredient which gave the material its essential characteristics.

The majority of the court below held that the importation belonged under the second bracket of paragraph 31 as "compounds of cellulose in sheets made into finished articles" and dutiable at 60 per cent ad valorem. We can not agree with this conclusion. We think the merchandise at bar is a compound of cellulose in sheets and is dutiable under the first bracket of paragraph 31 at 40 cents per pound. True enough, sheets of cellulose are articles but they are specially mentioned as sheets and it seems clear that such sheets, unless made into articles, can not be classifiable under the second bracket of the paragraph.

The judgment of the United States Customs Court is, for the reason last indicated, *reversed* and *remanded* for further proceedings not inconsistent with the views herein expressed.