(C. D. 448)

W. X. HUBER CO. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided March 11, 1941)

*Philip Stein* for the plaintiff.

. *Charles D. Lawrence*, Acting Assistant Attorney General (*Richard F. Weeks*, special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

TILSON, Judge: The plaintiff filed this suit against the United States seeking to recover a certain sum of money alleged to have been illegally exacted as customs duties on imported merchandise. The collector at Los Angeles levied duty on the merchandise at 90 per centum under paragraph 1529 (a) of the Tariff Act of 1930 as embroidered articles in chief value of yarns, threads, or filaments. The plaintiff claims the same to be properly dutiable at only 40 per centum ad valorem under paragarph 1023 of said act as manufactures wholly or in chief value of vegetable fiber, except cotton, not specially provided for.

At the trial samples of the merchandise were admitted in evidence and marked collective exhibit 1. This exhibit consists of one large piece and four small pieces, the former obviously a cover for a bridge table or tea table, and the four small pieces to be used as napkins.

One witness testified for the plaintiff that he was familiar with this type of merchandise by reason of the fact that it is produced in great quantities in South China, his original home; that during his childhood he had seen it made in Canton in the summertime, after harvest, by the servants of his household. As to the process of manufacture the witness testified that the material grows somewhat like the bamboo, to a height of from 4 to 6 feet and about ½-inch in diameter; the stalks are cut and allowed to lie on the ground and rot; they are then dried and sold in the market; that their surface is not quite as hard as bamboo. After the stalks are purchased in the market they are soaked in water, then pounded with a stone until broken or frayed;

the fiber is then spread out, or picked or pulled off from the stalk by hand, piece by piece, and the fibers are thus separated from the original stalk. The fibers, which are relatively long, are then joined at the ends by overlapping two fibers about 4 inches and then rolling on the knee, using a small piece of pottery; the material being moist, the rolling of the two overlapping ends causes the two fibers to merge together into one continuous strand; that these fibers are not twisted together as in making cotton thread, but the ends are joined merely by overlapping them and rolling them together. The imported merchandise is then woven on a hand loom from the fiber or material above described.

In giving the above testimony the witness was testifying as to his observations when he was a small boy, from 1908 to 1916, and, so far as this record shows, the witness had not observed the method of manufacturing the instant merchandise since the year 1916. The chief chemist at Los Angeles testified that he had examined this material and that it was made from ramie.

Counsel for the plaintiff contends in his brief filed herein that this merchandise is not made of ramie, but is made of the fibers of the plant of the nettle family. The record contains no evidence to support this contention. The testimony on this point is that it is called the fabric grass in China. This testimony falls far short of establishing that this merchandise is composed of the fibers of the plant of the nettle family. However, as we understand the main contention of counsel for the plaintiff, it is immaterial whether this material came from the plant of the nettle family or from the ramie plant. It is the contention of the plaintiff that the merchandise in this case is woven directly from the fiber of the plant, and that it is not composed in any part of any yarns, threads, or filaments within the meaning of paragraph 1529 of the act of 1930.

There is no evidence in this record to show that the method of producing the material of which this merchandise is composed in chief value was the same when the material in this merchandise was produced as it was in the year 1916. It is entirely possible that the production of the fibers in the manner described by the witness might not have brought them to the stage of yarns, threads, and filaments, but there is no evidence tending to show that the material of which the imported merchandise is composed in chief value is not yarns, threads, or filaments, within the meaning of said paragraph 1529.

In support of his contention herein, counsel for the plaintiff cites the case of *United States* v. *Veit*, 8 Ct. Cust. Appls., 290. In that case the merchandise consisted of trimmings in chief value of lamé or lahn and bullions, and the question was whether or not such material was in fact yarns, threads, or filaments. In holding that such material was

not yarns, threads, or filaments, the appellate court made the following observation:

According to these definitions the associated terms "yarns, threads, or filaments" would ordinarily apply to such materials only as may be used in the generally known processes of knitting, weaving, or sewing. This interpretation is approved in the present case by a comparison of the several provisions of the tariff paragraph in question. That paragraph names many specific articles, all of which are made by knitting, weaving, or sewing, or similar processes, and finally applied to all of them the phrase now under review, to wit, "all of the foregoing of whatever yarns, threads, or filaments composed."

We are therefore convinced that these terms were intended to cover only such materials as are generally known as materials for knitting, weaving, or sewing, and inasmuch as the present lame or lahn, and bullion, are incapable of such use, the goods of which they compose the chief value do not answer to the qualifications of the paragraph.

A case which we think is more directly in point here is that of *United States* v. *Field*, 18 C. C. P. A., 228, wherein the court was considering the question of whether or not wool felt rugs were composed in chief value of yarns, threads, or filaments, and, by reason of being appliqued, dutiable under paragraph 1430 of the act of 1922. In that case the court stated:

We do not construe paragraph 1430 to mean that the mere fact that an article is composed of materials which are susceptible of being made into yarns, threads, or filaments, but have not, in fact, been advanced to such a stage when put into the article, renders that article subject to the paragraph. The article, to come within the paragraph, must, we think, be composed wholly or in chief value of the materials which, in the process of its making, were actual yarns, threads, or filaments.

When this rule is applied to the instant case, manifestly the question is, in what condition was the material when manufactured into the rugs or mats? Had it been processed into yarns, threads, or filaments, or was it in a stage back of that? Obviously if composed of sheep wool the material was susceptible of being finally made into yarns; but had it been so treated, or was it in a prior stage?

Obviously the material of which the instant merchandise is composed in chief value was susceptible of being made into yarns, threads, or filaments. The best proof of that fact is the sample of the merchandise before us. No one disputes the fact that it was woven. Of course, we have no direct testimony that the material of which this merchandise is composed in chief value was generally known as material for knitting, weaving, or sewing, but such direct testimony is unnecessary in this case, because we have the presumptively correct classification of the collector, which on this point has not been disturbed by any testimony. Before the collector could classify this merchandise under paragraph 1529 he had to find as one of the essential facts supporting his classification that this material was generally known as material for knitting, weaving, or sewing.

This court cannot presume, in the absence of any testimony on the point, that the material of which this merchandise is composed in

chief value was not generally known as material for knitting, weaving, or sewing, in view of the collector's presumptively correct classification, which carried with it a finding that this material was not generally so known. It might well be doubted that the material as prepared in China from 1908 to 1916, as testified to by the witness, had reached a stage in its manufacture where it was generally known as material for knitting, weaving, and sewing, but we cannot assume that the method of producing this material has not changed in the past 24 years. If the method has not changed during these years, then the record should show that fact. If the record showed that the material of which the instant merchandise is composed in chief value was not such as is generally known as material for knitting, weaving, or sewing, then, on the authorities hereinbefore cited, we would be justified in holding that the merchandise was not covered by paragraph 1529.

In view of the conclusion which we have reached it is not necessary for us to consider the congressional history of paragraph 1529, as suggested by counsel for the plaintiff. If we were able to find from the record that the material of which the instant merchandise is composed in chief value was nothing more than fibers, then the argument advanced by counsel on this point would be very persuasive.

Referring to the case of *United States* v. *Borgfeldt*, 14 Ct. Cust. Appls. 240, counsel for the defendant makes the following statement in his brief filed herein:

This opinion makes it very clear that Congress intended that paragraph 1529 (a), 1930 Act, paragraph 1430, 1922 Act and paragraph 358, 1913 Act, all to embrace every article chiefly composed of true yarns, true threads, true fibers, true filaments, i. e. such as were used for weaving, sewing, knitting or embroidering.

With this statement we are not in accord. Our examination of the authorities does not substantiate this contention. The reference to "fibers" in the *Borgfeldt* case, *supra*, was by way of applying the holding in the *Rolland Frerés* case, 11 Ct. Cust. Appls., 321, and it appears that there was a very sound reason in the *Rolland* case for referring to "fibers." The merchandise in that case was classified under a paragraph which specifically provided for "fibers." The word "fibers" does not appear in either paragraph 1430 of the 1922 act or in paragraph 1529 of the 1930 act. Paragraph 1430 of the 1922 act and paragraph 1529 of the 1930 act cover and include only such articles as are therein *eo nomine* provided for and such articles as are made in part of articles therein *eo nomine* provided for and composed in chief value of yarns, threads, and filaments. This is far from being sufficient to *"embrace every article chiefly composed of true yarns, true threads, true fibers, true filaments."*

For the reasons hereinbefore stated all the claims of the plaintiff are overruled. Judgment will be rendered accordingly.